UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VISTA SPRINGS, LLC,<br>    a Delaware Limited Liability<br>    Company,<br>VISTA SPRINGS WYOMING LLC,<br>    a Michigan Limited Liability<br>    Company, and<br>VISTA SPRINGS RIVERSIDE<br>    GARDENS LLC,<br>    a Michigan Limited Liability<br>    Company,<br><br>       Plaintiffs,<br><br>v.<br><br>JENNIFER STANLEY, an individual,<br>MACKENZIE FERGUSON, an<br>    individual,<br>SARAH WOLTMAN, an individual,<br>VICKI DEAN, an individual,<br>MCAP EAST PARIS OPCO, LLC (d/b/a<br>COMMONWEALTH SENIOR LIVING AT<br>EAST PARIS) a Delaware Limited<br>    Liability Company,<br>MCAP GRAND RAPIDS OPCO, LLC (d/b/a<br>COMMONWEALTH SENIOR LIVING AT<br>GRAND RAPIDS),<br>    a Delaware Limited Liability Company, and<br>COMMONWEALTH SENIOR LIVING LLC,<br>    a Delaware Limited Liability<br>    Company,<br><br>       Defendants. | Case No.<br><br>Judge<br>Magistrate Judge |

---

## **COMPLAINT**

Plaintiffs, Vista Springs, LLC, Vista Springs Wyoming LLC and Vista Springs Riverside

Gardens LLC (collectively, "Plaintiffs" or "Vista Springs"), state for their Complaint against

Defendants, Jennifer Stanley ("Stanley"), Mackenzie Ferguson ("Ferguson"), Sarah Woltman ("Woltman"), Vicki Dean ("Dean"), MCAP EAST PARIS OPCO, LLC (d/b/a Commonwealth Senior Living at East Paris) ("CSLEP"), MCAP GRAND RAPIDS OPCO, LLC (d/b/a Commonwealth Senior Living at Grand Rapids) ("CSLGR") and COMMONWEALTH SENIOR LIVING LLC ("Commonwealth") (collectively, "Defendants"), as follows:

## Nature Of The Case

1.      This is a trade secrets, breach of contract and unfair competition case involving the deliberate raiding of key leadership personnel, the theft and misappropriation of key strategic company documents and information, unlawful solicitation of employees and vendors, and tortious interference – all for the joint and coordinated purposes by Defendants of gaining an unfair advantage and an unlawful and improper head start on competitive operations in West Michigan – completely new territory for Commonwealth – in an attempt to secure unjust gains for Defendants and to harm the individual Defendants' now former employer, Vista Springs.

2.      Vista Springs is a leading provider of senior living communities, with nine locations in Michigan (including four in West Michigan), and three in Ohio.[1]  Vista Springs serves seniors with assisted living, catered living, hospice, memory care, rehabilitation, respite care, wellness assessments, and clinical services.  Vista Springs trains its staff on marketing, approaches to care and service delivery, and in addition to its community members and employees, has relationships with community and other service providers and independent contractors.

3.      Commonwealth, CSLEP and  CSLGR  are new to West Michigan.  Commonwealth is larger than Vista Springs nationwide, and has the vast majority of its communities in Virginia.[2] By the fall of 2022, Commonwealth had hatched a plan to come in to this market, but not via fair

---

[1] *See generally*, https://www.vistaspringsliving.com/ (last visited June 29, 2023).
[2] *See generally*, https://www.commonwealthsl.com/ (last visited June 29, 2023).

competition; rather, by using key leaders of Vista Springs to violate their fiduciary duties and contracts, and using trade secrets and confidential and proprietary material to divert key staff in management, including operations and marketing executives, to set up a competing business with the most minimal of effort, energy and expense – using deceptive practices and on the backs of what Vista Springs had built.  To be sure, the plan of Defendants for West Michigan was to take all applicable Vista Springs directors (and indeed, each of them has been solicited) and Vista Springs vendors (one has already moved to Commonwealth and others have been solicited) and open Commonwealth locations with not only key Vista Springs employees, but also its training materials, strategies, education materials, executive and other manuals, and programming details, and other confidential, proprietary and trade secret information.

## Parties

4.     Plaintiff Vista Springs, LLC is a Delaware limited liability company, with its main office for business in Kent County (Grand Rapids), Michigan, at 2610 Horizon Dr. SE, Suite 110, Grand Rapids, Michigan 49546.  Vista Springs conducts business in the Western District of Michigan.

5.     Plaintiff Vista Springs Wyoming LLC is a Michigan limited liability company, with its main office for business in Kent County, Michigan, at 2708 Meyer Ave. SW, Wyoming, Michigan 49515.  Vista Springs Wyoming LLC conducts business in the Western District of Michigan.

6.     Plaintiff Vista Springs Riverside Gardens LLC is a Michigan limited liability company, with its main office for business in Kent County, Michigan, at 2420 Coit Ave. NE, Grand Rapids, Michigan 49505.  Vista Springs Riverside Gardens LLC conducts business in the Western District of Michigan.

7.      Ferguson is a resident of Montcalm County, Michigan, domiciled at 8577 Loveless Drive, Howard City, Michigan 49329.  Ferguson conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Ferguson occurred or had their effects, in whole or in part, in this judicial district.

8.      Stanley is a resident of Montcalm County, Michigan, domiciled at 8734 Gatewood Drive, Howard City, Michigan 49329.  Stanley conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Stanley occurred or had their effects, in whole or in part, in this judicial district.

9.      Woltman is a resident of Kent County, Michigan, domiciled at 6949 Belfast Avenue SE, Grand Rapids, Michigan 49508.  Woltman conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Woltman occurred or had their effects, in whole or in part, in this judicial district.

10.      Dean is a resident of Kent County, Michigan, domiciled at 3461 4 Mile Road, Grand Rapids, Michigan 49544.  Dean conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Dean occurred or had their effects, in whole or in part, in this judicial district.

11.      CSLEP is a Delaware limited liability company formed in February 24, 2020 with then principal offices on Madison Avenue in New York City.  CSLEP applied to transact business in Michigan on or about March 9, 2020, was formerly known as Lakeside Senior Living at East Paris, operates in Kent County and has its main location at 3956 Whispering Way Dr SE, Grand Rapids, MI 49546.  CSLEP conducted operations at all relevant times, within this judicial district, and the acts or omissions of CSLEP occurred or had their effects, in whole or in part, in this judicial district.

12.    CSLGR is a Delaware limited liability company formed in February 24, 2020 with then principal offices on Madison Avenue in New York City. CSLGR applied to transact business in Michigan on or about March 9, 2020, was formerly known as Addington Place of Grand Rapids, operates in Kent County and has its main location at 1175 68th St SE, Grand Rapids, Michigan 49508. CSLGR conducted operations at all relevant times, within this judicial district, and the acts or omissions of CSLGR occurred or had their effects, in whole or in part, in this judicial district.

13.    Commonwealth is a Delaware limited liability company formed in January 15, 2019 with then principal offices in Fishers, Indiana. Commonwealth applied to transact business in Michigan on or about August 5, 2022, operates in Kent County and owns or operates CSLEP and CSLGR. Commonwealth conducted operations at all relevant times, within this judicial district, and the acts or omissions of Commonwealth occurred or had their effects, in whole or in part, in this judicial district.

## Jurisdiction and Venue

14.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and applicable law, as this is a civil action arising under the laws of the United States for injunctive relief and damages as a result of Defendants' violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq.*

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a) and applicable law, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

16.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2), in that Ferguson, Stanley and Woltman consented to venue in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district,

and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

17.     Vista Springs brings this action under the Defend Trade Secrets Act, and applicable state law, including the Michigan Uniform Trade Secrets Act; breach of duty of loyalty by Ferguson, Stanley and Woltman; breach of contract by Ferguson, Stanley and Woltman; tortious interference with contract by CSLEP, CSLGR, Commonwealth and Dean; tortious interference with business relationships and expectancies by all Defendants; and conversion, civil conspiracy and aiding and abetting.  Vista Springs seeks immediate, preliminary and permanent injunctive relief that includes a return of all property and files taken by Defendants; and Vista Springs seeks damages, including, but not limited to, exemplary and punitive damages, compensation for all losses of any sort incurred and that have been and will be incurred by Defendants' conduct, and Vista Springs's attorney fees, expenses and costs in having to investigate, pursue and remedy Defendants' conduct and in conducting this litigation.

## Background Facts

### Vista Springs Has Taken And Takes Significant Measures To Protect Its Confidential, Proprietary and Trade Secret Information

18.     Vista Springs has spent years investing greatly in the development of its business, and takes significant measures to protect the confidentiality of its information.

19.     Vista Springs's confidential information (which also all constitute(s) trade secrets) includes, but is not limited to, financial information, marketing information, ideas, writings, cost and pricing information concerning materials, goods or services paid for or provided by Vista Springs, lists of existing and prospective clients and patients (community members), identity of vendors, methods, processes, formulas, computer or other programs, data, policies, procedures, manuals and the like (including, but not limited to, Vista Springs policy manual, the Vista Springs

executive manual, the Vista Springs health and wellness manual), site revenue information, community marketing plans, including targets; marketing assessments; revenue and expense plans; dining and other service relationships and pricing regarding same; training materials and programs; studies; programming materials; internal organizational data; contracts and contractual terms; pricing and cost information and data; and employee and compensation data.

20.     Among its numerous policies in the area of confidentiality, Vista Springs has IT providers who provide a full menu of cybersecurity measures along numerous platforms run by IT professionals.

21.     Vista Springs limits access to data and other sensitive and proprietary material. At all relevant times, Vista Springs maintained security controls including the use of locked or controlled access cabinets, confidentiality policies, confidentiality agreements; and authentication, network restrictions, and firewall protection, as it relates to protecting its information; and continues to do so.

22.     At all relevant times, Vista Springs also operated and managed all necessary infrastructure to support its internal-facing systems, and continues to do so.

23.     At all relevant times, Vista Springs has had one or more policies in place to enforce best-practices and technical controls in areas of authentication, access control, gateways, network restrictions, and cryptography as it relates to protecting Vista Springs's information.

24.     At all relevant times, Vista Springs also takes reasonable efforts to prevent transfer of data to unsanctioned cloud-based file storage services, such as DropBox, Google Drive, or Box, and continues to do so.

25.     Additionally, Vista Springs controls the ability to print remotely and monitors all printing activity from its systems.

7

26.     At all relevant times, Vista Springs also underwent regular vulnerability scans and penetration tests as well as internal vulnerability scans, and this remains the case.

27.     At all relevant times, Vista Springs regularly conducted risk assessments to identify areas of exposure and identify solutions to mitigate, and this remains the case.

***Vista Springs Hires Stanley, Ferguson, Woltman and Dean, Who Are Given Leadership But Leave Within A Short Span Together To Commonwealth, In Succession, And Seek To Take Others.***

28.     Ferguson, a licensed practical nurse ("LPN"), began at-will employment with Vista Springs LLC and/or Vista Springs Wyoming LLC on or about October 19, 2020, and began in the position of Co-Director of Health & Wellness Service, primarily at the Vista Springs Wyoming location (2708 Meyer Ave. SW, Wyoming, Michigan 49515).  She was later promoted to Co-Managing Partner (with Woltman) and Nurse at Vista Springs Wyoming, in December 2021. Months later, she resigned and left employment with Vista Springs in September 2022.  Since at least that time, Ferguson has been employed with Commonwealth/CSLEP in Grand Rapids, as an Executive Director (equivalent to Managing Partner).  Upon information and belief, Ferguson and Stanley conspired together and agreed upon a plan and/or solicited one another, directly or indirectly, to join Commonwealth, while still employed with one or more of the Plaintiffs.

29.     Stanley, also an LPN, began at-will employment with Vista Springs LLC and/or Vista Springs Riverside Gardens LLC on or about June 3, 2019, and began in the position of Health & Wellness Officer, primarily at the Vista Springs Riverside Gardens location (2420 Coit Ave. NE, Grand Rapids, Michigan 49505).  Vista Springs trained extensively, and in the spring of 2022 Vista Springs sent Stanley to an in depth training at corporate and to Michigan Center for Assisted Living (MCAL) Executive Training and MCAL Medication courses, and over time trained her extensively in leadership and administration.  In approximately August 2022, just before Ferguson

gave notice of her intent to resign from Vista Springs, Stanley asked her managing executive, Susan Alveshere, to be Ms. Alveshere's Co-Managing Partner, at Vista Springs Riverside Gardens. Stanley was given this role, only to then resign months later, and left employment with Vista Springs at the end of 2022, taking on the role of Executive Director at the other location of Commonwealth/CSLGR in Grand Rapids.   Upon information and belief, Stanley was solicited, directly or indirectly, by Ferguson.

30.     Woltman began at-will employment with Vista Springs LLC and/or Vista Springs Wyoming LLC in or about March 2013.  On December 13, 2019 she was promoted to Co-Managing Partner, serving in that role alongside Ferguson in that role, and also served as Marketing Executive, at Vista Springs Wyoming (she called herself on LinkedIn, Director Of Business Development with Vista Springs for a period of time).  She resigned from Vista Springs in or around March 2023.  Upon information and belief, Woltman was solicited, directly or indirectly, by Stanley and/or Ferguson.

31.     At or near the time of Woltman's resignation, in tears, she told CEO Lou Andriotti ("Andriotti") that she did not want to leave, but that she had to.  She related that she would be going to work for her family business, and that her family wanted her to work fewer hours and spend more time with her children.  Woltman also told Andriotti that with her parents present and helping her, it would be better for her children.  Andriotti had offered Woltman many other positions with flexible hours to meet her claimed needs, but in tears she told Andriotti that her family would not agree.   Andriotti wished her well.

32.     Instead, Woltman left Vista Springs to become Sales Director at Commonwealth/CSLEP, working again alongside Ferguson, beginning at least by April 2023, in which location and role (the East Paris location) she is employed now.

9

33.     Dean began at-will employment with Vista Springs LLC and/or Vista Springs Riverside Gardens LLC on or about September 8, 2016 as Health and Wellness Coordinator.  On or about June 9, 2021, Vista Spring promoted Dean to Wellness Director.  She resigned from Vista Springs in or around April 2023, near the beginning of the month but effective toward the end of the month.

34.     Before she left, Dean downloaded the Vista Springs policy manual and Vista Springs health and wellness manual, about two weeks prior to leaving Vista Springs, and sent these items to one or more personal email addresses.  Dean began employment in or around April 2023 at Commonwealth/CSLGR in Grand Rapids.  Upon information and belief, Dean was solicited, directly or indirectly, by Stanley, Ferguson and/or Woltman.

35.     Prior to leaving Vista Springs, Dean also approached Vista Springs employee Kourtney Selby ("Selby"), Employee Experience Director – First Shift, to become a supervisor at Commonwealth under Stanley.

36.     Dean and Stanley also invited Selby for a personal tour by Stanley at Commonwealth.  Selby accepted the invitation and went to Commonwealth with Dean, prior to Dean leaving Vista Springs, and at Commonwealth/CSLGR, Stanley personally toured Selby and offered Selby a position of a supervisory role at Commonwealth/CSLGR.

37.     Dean took with her one or more physical copies of Vista Springs policy binders, and at least a physical executive manual binder and medical manual.

38.     Vista Springs executive keys to Vista Springs Riverside Gardens held by Dean were next to a box that Dean was packing prior to her leaving her position at Vista Springs.  Mere minutes after that box was loaded into Dean's, car Dean stated that they keys were "missing." Dean ignored or brushed off a female employee who told Dean she had seen Dean with these keys

in her possession, custody or control as noted above.

39.     During Dean's second week at Commonwealth, Selby met Dean for dinner, but took her sister because Dean and Stanley had been pressuring her so hard to leave Vista Springs. Dean called Stanley while at the table, and both Dean and Stanley were pressuring Selby during this dinner to leave Vista Springs and join Commonwealth.

40.     Selby had been told many times by Dean, that Joy DeVries (Vista Springs Riverside Gardens Managing Partner) will be coming over to Commonwealth soon, and that they (Stanley and Dean) will "get her to come to the dark side; it's only a matter of time."

41.     Dean has also approached Vista Springs employee Alexa Parker to be the Medication Technician Trainer at Commonwealth under Stanley.  Dean stated to Parker, that Stanley would "pay you more than Vista Springs."

42.     Dean has also approached Vista Springs employee Alexis Youngblood to be the Medication Technician Trainer at Commonwealth under Stanley.  Dean stated to Youngblood, that Stanley would "pay you more than Vista Springs."

43.     Dean has also stated to another employee to the effect that Brooke Stavn and Joy DeVries were leaving Vista Springs (for Commonwealth), and to the effect that "a lot of other Vista Springs employees will be moving to Commonwealth."

44.     Dean told Jason Gauna (a vendor and partner from The Care Team) that he needed to leave Vista Springs and "come over to Commonwealth with me, Jen and Joy;" that it would be "So much better, and you would be treated really well."

45.     Stanley started texting Joy DeVries in October of 2022, and Stanley would write to the effect, "How are you? Is EVERYTHING okay, because remember, I can't ask you"; and then she would text Joy, "Ready?" and Joy would text back, "For?."  Then later that day or the next

11

day, Commonwealth would email Joy DeVries. They would tell Joy in the email to the effect: "Someone who works as an Executive Director at Commonwealth has referred you to us. Please go to this link and apply."  This person would give them her name, phone number, and her email. This only occurred the day or the day after Stanley would reach out.

46.    Ms. DeVries was solicited for a business manager position and then later, a marketing position which came later, and she was solicited multiple times.

47.    Ms. DeVries has also received multiple voice mails from Commonwealth trying to hire her to work in Stanley's community (CSLGR) in which Stanley is an Executive Director.

48.    Stanley reached out to Ms. DeVries on Ms. DeVries's personal phone on at least the following dates:  October 5, 2022, November 23, 2022, December 15, 2022, January 4, 2023, February 2, 2023, February 25, 2023, and March 31, 2023.

49.    Stanley (before she left Vista Springs) asked for a Vista Springs Executive Manual to be printed for her, which Ms. DeVries did.  Stanley never gave this manual back to Vista Springs.

50.    Stanley took with her upon departure from Vista Springs Riverside Gardens the MCAL Medication Manual called *Train the Trainer*.  She also took the MCAL Executive Training Manual and MCAL Workbooks owned by Vista Springs.  Stanley was also seen scanning the MCAL Medical Training Manual and handing one out to Dean.  Stanley also took with her a Vista Springs Executive Training Manual, which trains new Executives on how to market, work with staff, how to run a luxury assisted living, Vista Springs plans for its events and activity plans; a Vista Springs Employee Handbook; documents showing everything on how to run an assisted living community as well as the Vista Springs "Remember Me" Memory Care manual.  All of these manuals were missing from both Stanley's office and Dean's office upon their departure,

12

leaving no instructional manuals for the incoming Health and Wellness Director and Quality Assurance Nurse.

51.     Cease and desist letters were sent to Ferguson, Stanley, Woltman and Dean in May 2023, but via counsel each have wrongly denied in conclusory fashion soliciting or having taken with them any Vista Springs materials.

52.     Upon information and belief, all of the above materials have been and are being misappropriated among one or more Defendants, and Defendants have via their conclusory denials and refusal to return any items, shown they are willing to brashly continue their unlawful conduct, unfair competition and violations of their contractual and other legal duties.

53.     Indeed, not only did Defendants deny wrongdoing via blanket denials, after the cease and desists, in late May 2023, Stanley became unhinged and loudly and improperly screamed at a Vista Springs employee who was on site to arrange for an orderly and lawful transfer of a community member from Commonwealth to Vista Springs (which is the community member's legal right), with Stanley falsely accusing the Vista Springs employee of wrongdoing and ordering her off the property.

54.     In connection with their hire and/or promotion, Ferguson, Stanley and Woltman each signed an offer letter containing restrictive covenants. *See* Exhibit A (Ferguson; signed by Ferguson on October 19, 2020); Exhibit B (Stanley; signed by Stanley [f/k/a Jennifer Slater] on May 16, 2019); and Exhibit C (Woltman; signed by Woltman on December 6, 2021).

55.     Among other things, Ferguson, Stanley and Woltman agreed to the following confidentiality and property provisions:

a) **Obligation to Maintain Confidentiality.** You acknowledge that as an employee of Vista Springs, you shall have access to "Confidential or Proprietary Information", as defined below. You also acknowledge that during the course and scope of your employment at Vista Springs, you will have access to "Private Information", as defined below. "Confidential or Proprietary Information" means any non-public information that you learned, had access to, or developed during your employment with Vista Springs and which (i) relates to the business of Vista Springs, to the business of any of Vista Springs' clients, vendors, community members, or to any other party that has done business (or intends to do business) with Vista Springs, or (ii) has been created, discovered or developed by, or has otherwise become known to, Vista Springs and is used by Vista Springs in the conduct of its business. Confidential or Proprietary Information includes, but is not limited to trade secrets, ideas, writings, cost and pricing information concerning materials, goods or services paid for or provided by Vista Springs, lists of existing and prospective clients and patients, identity of vendors, methods, processes, formulas, computer or other programs, data, policies, procedures, manuals and the like, which may or may not rise to the level of a trade secret, and/or may or may not be patented or copyrighted information. You acknowledge that such Confidential or Proprietary Information was created as a result of substantial efforts and expenditures on the part of Vista Springs and that it is not and will not be in the public domain. You acknowledge that your employment by Vista Springs creates a relationship of confidence with respect to Confidential or Proprietary Information.

You acknowledge that all Confidential or Proprietary Information is the sole property of Vista Springs. During your employment with Vista Springs and at all times after such employment with Vista Springs ends for any reason, you acknowledge and agree that: (1) you shall maintain in confidence all Confidential or Proprietary Information or anything relating thereto; (2) you will not disclose to any third party and will not publish or submit for publication any Confidential or Proprietary Information; and (3) you will not use Confidential or Proprietary information for your benefit or for the benefit of any third party without the prior written permission from Vista Springs' CEO.

"Private Information" means information which relates to Vista Springs employees including, but not limited to, personnel files, salary and payroll records and reports, disciplinary reports, income, compensation and pension and welfare plan arrangements, business expenditures, employment agreements, and expense reports. You acknowledge that your employment by Vista Springs creates a relationship of confidence with respect to Private Information.

*See* Exhibits A, B and C, at "Employee Covenants" ¶ (a) ("Obligation to Maintain Confidentiality").

56.     Among other things, Ferguson, Stanley and Woltman agreed not to solicit as follows:

In addition, you agree that during your employment with us and for one (1) year after your employment with us ends for any reason you will not solicit by electronic mail, mail, phone, personal meeting, or any other means, either directly or indirectly, any employee or independent contractor employed or affiliated with Vista Springs in any capacity. Your agreement "not to solicit" also means that you will not engage in any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging, assisting or requesting any Vista Springs employee or independent contractor to (1) discontinue their employment or independent contractor relationship with Vista Springs, or (2) affiliate in any manner with another company irrespective of whether you have an ownership interest or business interest in such company.

14

*See* Exhibits A, B and C, at "Employee Covenants" ¶ (b) ("Non-Solicitation").

57.     As for working for others while still employed, Ferguson, Stanley and Woltman agreed

> c) **No Conflict of Interest.** During your employment with the Company, you agree to not engage in any work, paid or unpaid, that creates an actual or potential conflict of interest with the interests of the Company. Conflicts of interest shall include, but are not limited to, directly or indirectly competing with the Company in any way, or acting as an officer, director, employee, consultant, stockholder, volunteer, lender, or agent of any business enterprise of the same nature as, or which is in direct competition with, the business in which the Company is now engaged or in which the Company becomes engaged during your employment with the Company, as may be determined by the Company in its sole discretion. If the Company believes such a conflict exists during your employment, the Company may ask you to choose to discontinue the other work or resign employment with the Company.

*See* Exhibits A, B and C, at "Employee Covenants" ¶ (c) ("No Conflict of Interest").

58.     Upon information and belief, Ferguson, Stanley, Woltman and Dean each began working for Commonwealth in some manner before actually leaving their employment with Plaintiffs.

59.     Each of the Defendants knows that Ferguson has solicited one or more employees of Plaintiffs to join Defendants at Commonwealth.

60.     Each of the Defendants knows that Stanley has solicited one or more employees of Plaintiffs to join Defendants at Commonwealth.

61.     Each of the Defendants knows that Woltman has solicited one or more employees of Plaintiffs to join Defendants at Commonwealth.

62.     Each of the Defendants knows that Dean has solicited one or more employees of Plaintiffs to join Defendants at Commonwealth.

63.     Each of the Defendants knows that one or more individual Defendants have taken with them tangible documents belonging to Vista Springs.

64.     The individual Defendants have with them and/or have come to know not only

tangible trade secrets belonging to Plaintiffs but also intangible trade secrets belonging to Plaintiffs.  Defendants have misappropriated these trade secrets and threaten to continue to do so.

65.     Upon information and belief, Defendants have been using and are continuing to use and disclose trade secrets, confidential and proprietary information, including, but not limited to, the documents, files and information taken from Vista Springs (as noted herein as well as other items presently unknown to Plaintiffs, taken by one or more of the Defendants) and otherwise held by one or more Defendants, and also including, but not limited to, Defendants' insider and specific knowledge of employees, vendors, marketing, executive training, community establishment and operations, community member needs, plans, histories, and pricing and cost information, and employee information, in an attempt by Defendants to solicit employees, vendors, independent contractors and sources of revenue away from Vista Springs.

66.     Upon information and belief, Defendants are setting their sights not on merely the general population of employees in the marketplace, but specifically on key Vista Springs personnel (first including the individual Defendants, but also including those with whom the individual Defendants), in total violation of contractual and other legal obligations.

67.     Unless Defendants are immediately and fully restrained and ordered to return all Vista Springs data and documents in all forms, including all iterations of same, and barred from further use or disclosure, Vista Springs faces an imminent, irreparable and extensive threat to its business.

## Causes of Action

### COUNT I –
### VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016,
### 18 U.S.C. §§ 1836, *et seq*.
### (All Defendants)

68.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

69.    Plaintiffs own and possess certain confidential, proprietary and trade secret information, as alleged above.  This confidential, proprietary, and trade secret information relates to products and services that are used, shipped, sold and/or ordered in, or that are intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce, including in the health care industry.  Plaintiffs' services, products, community members, vendors and affiliated entities combined cover vendors, community members, products and services in numerous additional states beyond Vista Springs's locations.

70.    Plaintiffs derive independent economic value from the fact that their confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means.  Plaintiffs have taken, and continue to take, reasonable measures to keep that information secret and confidential.

71.    Without Plaintiffs' consent, Defendants misappropriated the confidential, proprietary, and trade secret information in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.

72.    The improper means used by Defendants to acquire and disclose Plaintiffs trade secrets include, among other things:

        a.    Breaching and inducing breaches of specific provisions of Plaintiffs'

agreements with Ferguson, Stanley and Woltman;

b.   Stanley and Dean using their roles with Vista Springs to exfiltrate numerous manuals, binders and documents to personal emails or to their own possession for use at Commonwealth and among Defendants;

c.   Stanley, Dean and the other Defendants working with others or with one another, to cover their tracks;

d.  The individual Defendants all giving opaque or false reasons for resignations, to deflect attention or avoid scrutiny;

e.   Stanley resigning within a very short time of Ferguson, but only after achieving the executive role she did with Vista Springs; and

f.   Dean working as agent for one or more other Defendants to accomplish their violations of contract and/or law.

73.   As a direct result of Defendants' conduct, Plaintiffs have suffered, and if the conduct is not enjoined, will continue to suffer, harm.

74.   Defendants' conduct entitles Plaintiffs to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i).

75.   Plaintiffs request that the Court take affirmative action to protect their trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Defendants' computers, mobile devices, personal USB and electronic storage devices, email accounts, "cloud"-based storage accounts, and mobile device call and message history, to determine the extent to which Plaintiffs' trade secrets were wrongfully taken and/or disseminated to others.

76.   Defendants' misappropriation and disclosure of Plaintiffs' trade secrets entitles Plaintiffs to monetary damages, fees, expenses and costs, as provided in 18 U.S.C. §

1836(b)(3)(B).  Plaintiffs are also entitled to recover for Defendants' unjust enrichment.

77.     Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious and was undertaken for the purpose of harming Plaintiffs.  Plaintiffs therefore seek exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

## COUNT II –
## VIOLATION OF THE MICHIGAN
## UNIFORM TRADE SECRETS ACT,
## MICH. COMP. LAWS ANN. §§ 445.1901, *et seq.*
## (All Defendants)

78.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

79.     Upon information and belief, Defendants disclosed or used Plaintiffs' confidential, proprietary, and trade secret information without the express or implied consent of Plaintiffs, and they knowingly used improper means to acquire that confidential, proprietary, and trade secret information.

80.     Such confidential, proprietary, and trade secret information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use.  As such, Plaintiffs take reasonable efforts to guard against such disclosures and to maintain the secrecy of its confidential, proprietary, and trade secret information.

81.     The continued misuse and possession of Plaintiffs' property by Defendants was and is unauthorized and unlawful.

82.     Defendants' possession and misuse of Plaintiffs' property has resulted in an inequity.

83.     This conduct constitutes both the actual and threatened use and/or disclosure of

trade secrets belonging to Plaintiffs.

84.     Plaintiffs have no adequate remedy at law for Defendants' actions because the damages Plaintiffs have suffered and will continue to suffer in connection with the disclosure and use of its confidential information and trade secrets described herein and the use and disclosure of its property threaten damage to Plaintiffs' goodwill, community member base, and business reputation, which damages are incapable of exact proof.

85.     Defendants will, unless restrained preliminarily and permanently, continue to use and disclose Plaintiffs' confidential, proprietary, and trade secret information.

86.     Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendants and those acting in concert with them or on their behalf from continuing this unlawful conduct and enjoining them from engaging in further actual or threatened acts of misappropriation is required to provide Plaintiffs meaningful relief.

87.     Due to Defendants' use and disclosure of Plaintiffs' trade secrets, Plaintiffs has sustained damage and further seeks an award of its reasonable and necessary attorneys' fees, expenses and costs.

**COUNT III –**
**BREACH OF DUTY OF LOYALTY**
**(Ferguson and Stanley Only)**

88.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

89.     As a high-level executives of Plaintiffs, Ferguson and Stanley were entrusted with key, competitive information and owed a duty of loyalty to Plaintiffs to use the strategic and/or competitive information, data, documents, and employee and vendor detail for the benefit of Plaintiffs while employed.

90.    Ferguson and Stanley also owed Plaintiffs a duty not to compete – directly or indirectly, and whether themselves or in connection with a company or via others – against Plaintiffs while still employed by Plaintiffs.

91.    By virtue of their conduct described above and other conduct while employed with Plaintiffs, Ferguson and Stanley materially breached their duties to Plaintiffs.

92.    As a direct and proximate result of Ferguson's and Stanley's conduct, Plaintiffs have sustained damages in an amount to be determined by a trier of fact and including, but not limited to, amounts paid to Ferguson and Stanley (compensation) as well as the value of employee benefits provided, lost recoupment of funds, recruiting costs, opportunity costs, interest, internal labor costs, and attorney fees, costs and expenses.

**COUNT IV –**
**BREACH OF CONTRACT**
**(Offer Letters)**
**(Ferguson, Stanley and Woltman Only)**

93.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

94.    Pursuant to the Offer Letters, Ferguson, Stanley and Woltman agreed not to take, retain, use or disclose program, policy, training and other documents, information or data of Plaintiffs, as stated therein.

95.    Pursuant to the Offer Letters, Ferguson, Stanley and Woltman agreed not to solicit, directly or indirectly, employees or independent contractors of Plaintiffs for one year, as stated therein.

96.    Pursuant to the Offer Letters, Ferguson, Stanley and Woltman agreed not to engage in conduct amounting to a conflict of interest while employed with Plaintiffs, as stated therein.

97.    By virtue of their conduct described above and other conduct, Ferguson, Stanley

and Woltman have each, upon information and belief, materially breached the terms of their Offer Letters.

98.    As a direct and proximate result of the conduct of Ferguson, Stanley and Woltman, Plaintiffs have sustained monetary damages in an amount to be determined by a trier of fact and including, but not limited to, lost business, fees and expenses to pursue Defendants, as well as an irreparable and imminent further loss of goodwill, client relationships, strategic advantage, and potential future business.

### COUNT V –
### TORTIOUS INTERFERENCE WITH CONTRACT
### OR CONTRACTUAL RELATIONS
### (Commonwealth,  CSLEP, CSLGR and Dean Only)

99.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

100.    Plaintiffs' Agreements with Ferguson, Stanley and Woltman are valid contracts.

101.     These contracts have been breached by Ferguson, Stanley and Woltman.

102.    Upon information and belief, Commonwealth, CSLEP, CSLGR and/or Dean unjustifiably instigated the breach(es) by encouraging and/or assisting Ferguson, Stanley and Woltman or otherwise.

103.    As a result of Commonwealth's, CSLEP's, CSLGR's and/or Dean's unjustifiable instigations of the breaches and related conduct, Plaintiffs have suffered and will continue to suffer damages.

### COUNT VI –
### TORTIOUS INTERFERENCE WITH BUSINESS
### RELATIONSHIPS OR EXPECTANCIES
### (All Defendants)

104.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully

set forth herein.

105.    Plaintiffs enjoyed business relationships and/or expectancies of business relationships with certain vendors, independent contractors and employees, including vendors, independent contractors and employees with whom Defendants are now doing business and/or soliciting to do business.

106.    Defendants knew and were aware of these business relationships and/or expectancies.

107.    The business relationships and expectancies describe above had an actual economic benefit and/or likelihood of economic benefit to Plaintiffs.

108.    Defendants knowingly and intentionally used the trade secrets and confidential information and breaches of their agreements and/or other legal duties to induce Plaintiffs' vendors, independent contractors and employees to do business with Defendants instead of Plaintiffs when Plaintiffs validly expected those vendors, independent contractors and employees to do (and/or continue to do) business with Plaintiffs.

109.    The aforesaid acts were inherently wrongful and could not be justified under any circumstances.

110.    Defendants' actions have resulted in damages to Plaintiffs in the form of disruption of the business relationships, and expectancies, between Plaintiffs and their vendors, independent contractors and employees.

**COUNT VII –
CONVERSION
(STATUTORY – MICH. COMP LAWS ANN § 600.2919(A) –
AND COMMON LAW CONVERSION)
(All Defendants)**

111.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully

set forth herein.

112.     Upon information and belief, one or more Defendants wrongfully asserted control over and obtained Plaintiffs' keys (executive keys from at least one facility), files, and documents, and the information and data contained therein.

113.     Such conduct was willful and knowing.

114.     Upon information and belief, such conduct was done for Defendants' own use and possibly for the use of their affiliates and/or others.

115.     Plaintiffs have been damaged by this conduct, and are entitled to an award of actual damages and treble damages, plus their attorney fees and costs.

116.     Preliminary and permanent injunctive relief is required for the return of all keys, files, information, data and property converted by Defendants, and to prevent further misuse or disclosure of the data and property, and no adequate remedy exists at law for complete relief absent such injunctive relief.

### COUNT VIII
### UNJUST ENRICHMENT
### (Ferguson, Stanley, Woltman and Dean only)

117.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

118.     Ferguson, Stanley, Woltman and Dean accepted the benefits conferred on them by their employment and training with Plaintiffs and/or the agreements with Plaintiffs each signed.

119.     Commonwealth, CSLEP and/or CSLGR hired Ferguson, Stanley, Woltman and Dean with full knowledge of their offer letters and/or other legal duties owed to Plaintiffs.

120.     Instead of abiding by the duties and obligations placed upon them by the terms of their employment and/or these agreements, Ferguson, Stanley, Woltman and Dean have ignored

24

those duties and obligations, and have instead intentionally and willfully violated the terms of the above-referenced legal duties and/or agreements by soliciting Plaintiffs' vendors, independent contractors and employees to leave or reduce ties to Vista Springs and to join Commonwealth.

121.    Ferguson, Stanley, Woltman and Dean have taken the benefits of the above-referenced employment and/or agreements with Plaintiffs, but they have failed and/or refused to abide by the duties and obligations promised by them in exchange for those benefits.

122.    As a result of Ferguson's, Stanley's, Woltman's and Dean's wrongful retention of the benefits they received in exchange for the duties and obligations which they have failed and/or refused to perform, Ferguson, Stanley, Woltman and Dean have been unjustly enriched.

123.    It is unjust and inequitable for Ferguson, Stanley, Woltman and Dean to retain any benefits they received from Plaintiffs under their employment and/or agreements with Plaintiffs, in light of Defendants' failure and/or refusal to comply with the duties and obligations owed by them to Plaintiffs.

124.    As a result of their wrongful actions, Ferguson, Stanley, Woltman and Dean have been unjustly enriched by their derogation of and refusal to comply with the duties and obligations owed by them to Plaintiffs.

125.    Plaintiffs request that all monies paid by them to Ferguson, Stanley, Woltman and Dean in exchange for their employment (from at least the time of breach of legal duty) and/or their now-breached agreements be returned and refunded, along with all applicable interest on those monies.

## COUNT IX –
## AIDING AND ABETTING
### (All Defendants)

126.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully

set forth herein.

127.    Defendants' actions independently establish the wrongs complained of herein.

128.    Upon information and belief, each Defendant knew of the wrongs committed by the other Defendant.

129.    Upon information and belief, each Defendant provided substantial assistance to the other Defendant to effect the wrongs committed by each of the Defendants.

130.    Upon information and belief, Defendants acted together, in concert, or at the direction of each other, to wrong Plaintiffs.

131.    Upon information and belief, Defendants knowingly aided and abetted one another in the misconduct and unlawful conduct outlined above.

132.    As such, Defendants are jointly and severally responsible for each and every wrong committed.

133.    Plaintiffs have been damaged by this conduct, and are entitled to an award of actual damages and treble damages, plus their attorney fees and costs.

**COUNT X –**
**CIVIL CONSPIRACY**
**(All Defendants)**

134.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

135.    Upon information and belief, Defendants have been, and are, engaged in a concerted action to divert, use and disclose Plaintiffs' confidential, proprietary and trade secret information, and to violate Ferguson's, Stanley's, and Woltman's contractual and other duties owed to Plaintiffs and intentionally and wrongfully continuing to exercise control over Plaintiffs' property and employees and seeking improperly to cover their tracks, and are causing damage to

Plaintiffs.

136.    Plaintiffs has no adequate remedy at law for Defendants' conspiracy because the damages Plaintiffs has suffered and will continue to suffer in connection with the above loss of employees and misuse and wrongful disclosure of Plaintiffs' confidential, proprietary and trade secret information are incapable of exact proof.

137.    Defendants, unless restrained, will continue to conspire to damage Plaintiffs through the use and disclosure of Plaintiffs' confidential, proprietary and trade secret information and other misconduct.

138.    Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendants from continuing to conspire, is needed to provide Plaintiffs meaningful relief.

139.    Due to the misuse of confidential, proprietary and trade secret information, breaches of contractual and other duties owed and other unlawful conduct Defendants have conspired to commit, Plaintiffs have suffered and continue to suffer damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request the following relief:

a)      A temporary restraining order and preliminary injunction providing the securing and return of all tangible materials, whether electronic or hard copy, that were obtained from and/or belong to Plaintiffs (and/or their affiliates) that have been or remain in Defendants' possession, custody or control, including, but not limited to, Plaintiffs' confidential, proprietary and trade secret information;

b)      A temporary restraining order and preliminary injunction preventing the individual Defendants from violating their various confidentiality obligations;

c)      Expedited discovery to provide Plaintiffs with immediate information on the more

precise nature, extent and breadth of the breaches and other unlawful conduct committed by Defendants and anyone else acting in concert with them or on their behalf;

d)      A full analysis of the files and clients taken by Defendants, and the remediation, purging and/or return of files; and Court-enforced assurances regarding same;

e)      An order mandating specific performance of the individual Defendants' restrictive covenants;

f)      Enter a judgment against Defendants for actual, treble, exemplary, and punitive damages in an amount to be determined at the time of trial, in excess of $75,000.00;

g)      Interest and costs;

h)      Along with final disposition of this matter, a permanent injunction against Defendants to the same or greater effect as the temporary restraining order(s) and/or preliminary injunction(s) sought herein;

i)      An award of Plaintiffs' attorneys' fees and expenses; and

j)      Other relief the Court and/or trier of fact deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

CLARK HILL PLC

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
CLARK HILL PLC
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
616.608.1126
pwilhelm@clarkhill.com

Date:  June 29, 2023                                    *Attorneys for Plaintiffs*

28